SMARR (BARTLEMAN v.).    See Case No. 1,074.

---

## Case No. 12,964.

### SMEDBERG v. BENTLEY.

[21 Int. Rev. Rec. 38.]

Circuit Court, D. New Jersey. Nov., 1874.

CONSTITUTIONAL LAW—INCOME TAX—DIRECT TAXES—APPORTIONED AMONG STATES.

[An income tax, such as that laid by the act of July 14, 1870, is not a "direct tax," which is required by the constitution of the United States (article 1, §§ 2, 9) to be apportioned among the several states; and the act is valid notwithstanding that it lays the tax by the rule of uniformity. Applying Hylton v. U. S., 3 Dall. (3 U. S.) 171; Pacific Ins. Co. v. Soule, 7 Wall. (74 U. S.) 443; and Veazie Bank v. Fenno, 8 Wall. (75 U. S.) 533.]

This action [by Oscar Smedberg against James V. Bentley, collector of internal revenue] was brought to recover the amount of tax paid by the plaintiff upon his income for the year 1871, under the act of congress of July 14, 1870 [16 Stat. 256]. The tax was paid under protest. The question raised by the pleadings in the case, was whether the tax on incomes imposed by said act was not unconstitutional. The plaintiff's declaration alleged that said tax was within the meaning of the words "capitation or other direct tax," in the 9th section of the 1st article of the constitution of the United States, and that as it was by the terms of said act laid uniformly throughout the United, instead of being apportioned among the several, States, according to their respective numbers, as required by the 2nd section of the 1st article of the constitution, the act was unconstitutional and void, and the tax illegally assessed and collected. The defendant demurred. The case was argued in the United States circuit court at Trenton, before Hon. John T. Nixon, district judge, in November last.

E. W. West and Miron Winslow, for plaintiff.

A. Q. Keasley, U. S. Dist. Atty., for defendant.

NIXON, District Judge. This was a suit brought by the plaintiff against the collector of internal revenue for the Fourth collection district of New Jersey, to recover back certain taxes on his income for the year 1871, which he had paid to the defendant under protest. The first count of the declaration alleges that the only warrant or color of authority or right that the defendant had for collecting or receiving from the plaintiff the said tax, was derived from an act of congress, entitled "An act to reduce internal taxes, and for other purposes," approved July 14, 1870, and particularly the sections from 6 to 11, inclusive, which provide for the levying and collection of a tax of two and one-half per centum upon the gains, profits and income of the persons therein described; and that the amount so collected and received by the defendant from the plaintiff was collected and received as the amount of the tax upon the income of the plaintiff, imposed by virtue of the said sections; that it was a direct tax, and that as such the same was not laid agreeably to the provisions of the third paragraph of the second section of the first article of the constitution of the United States, but contrary thereto; and that the several sections of the said act, under which the said tax was levied and collected, was repugnant to the provisions of the constitution, and therefore void. The defendant demurred to the said count, and the only question presented to the court, on the demurrer, is the constitutionality of said legislation.

It is not at all material to this case to state what may have been the opinion of this court, if the question were open for its

consideration. It is sufficient to say that the supreme court has left nothing to be done here, except to sustain the demurrer of the defendant.

It is claimed by the counsel of the plaintiff that the income tax was unconstitutional, because it was a direct tax within the meaning of the constitution, and ought to have been apportioned among the states according to their population. The second section of the first article of the constitution of the United States provides "that representatives and direct taxes shall be apportioned among the several states, which may be included within this Union, according to their respective numbers," and authorizes the congress to make provision for a census every ten years, to determine such numbers. The ninth section of the same article says: "No capitation or other direct tax shall be laid unless in proportion to the census or enumeration herein before directed to be taken." The only other references to the subject of taxation in the constitution, are found in the eighth and ninth sections of the first article, prohibiting the states from laying any tax or duty on exports, and authorizing congress "to lay and collect taxes, duties, imposts and excises; to pay the debts, and provide for the common defence and general welfare of the United States; but all duties, imposts and excises shall be uniform through the United States."

It is conceded under these constitutional provisions, that if any income tax is not a direct tax, it should be laid by the rule of uniformity; but if it is a direct tax, it can only be laid after an apportionment among the states, according to the last census. The question of the meaning of a direct tax, in the sense of the constitution, came under the consideration of the supreme court, in Hylton v. U. S., 3 Dall. [3 U. S.] 171. This was in 1796. The case was elaborately argued, and excited great interest at the time, as some of the parties engaged in the discussion and decision were amongst the most distinguished of the members of the convention which framed the constitution. It was the unanimous opinion of the court that a tax on carriages was not a direct tax, but was included within the power to levy duties; and that the only direct taxes contemplated by the constitution were two, to wit, a capitation or poll tax, and a tax on land. Pacific Ins. Co. v. Soule, 7 Wall. [74 U. S.] 443, was a case arising under the internal revenue act of June 30, 1864 [13 Stat. 223], and the amendment thereto of July 13, 1866 [14 Stat. 98]. The corporation plaintiff had brought suit against the defendant to recover back monies alleged to have been wrongfully paid upon its business and income, and it was conceded that if a tax upon income was a direct tax, under the constitution, the act was unconstitutional, because it had not been laid by the rule of apportionment. The court was again unanimous that the income tax or duties laid by sections 105 and 120 of the said act, upon the amounts insured and assessments made, and upon the dividends and income, was not a direct tax, but a duty or excise. Mr. Justice Swayne, in delivering the opinion, after reviewing the case of Hylton v. U. S., supra, said: "If a tax upon carriages, kept for his own use by the owner, is not a direct tax, we can see no ground upon which a tax on the business of an insurance company can be held to belong to that class of revenue charges." The only other case to which we shall advert is that of Veazie Bank v. Fenno, 8 Wall. [75 U. S.] 533, where it was held that the 9th section of the act of July 13, 1866, which provides that all banking associations shall pay a tax of ten per cent. on the amount of the notes of any state bank, paid out by them after the 1st day of August, 1866, does not lay a direct tax within the meaning of the clause of the constitution, which ordains that "direct taxes shall be apportioned among the several states according to their respective numbers."

The late chief justice carefully investigated the taxing powers of congress under the constitution, and the methods therein authorized. In the course of his opinion, he observes: "Much diversity of opinion has always prevailed upon the question, what are direct taxes? Attempts to answer it by reference to the definitions of political economists have been frequently made, but without satisfactory results. The enumeration of the different kinds of taxes, which congress was authorized to impose, was probably made with very little reference to their speculations. The great work of Adam Smith, the first comprehensive treatise on political economy in the English language, had then been recently published; but in this work, though there are passages which refer to the characteristic difference between direct and indirect taxation, there is nothing which affords any valuable light on the use of the words 'direct taxes' in the constitution." He then resorts to the historical evidence furnished by the manner in which the congress had always exercised the power, and from this draws the inference that "direct taxes," as therein used, comprehended only capitation taxes and taxes on land, and, perhaps, as was suggested by Mr. Justice Paterson, in Hylton v. U. S. [supra], taxes on personal property by general valuation and assessments of the various descriptions possessed within the several states. "It follows," he adds, "necessarily that the power to tax without apportionment extends to all other objects. Taxes on other objects are included under the heads of taxes not direct duties, imposts and excises, and must be laid and collected by the rule of uniformity. The tax under consideration is a tax on bank circulation, and may very well be classed under the head of duties." Although

a difference of views existed in the court as to another question involved in the case, to wit, whether such a tax could be upheld consistently with the constitutional power in the states to create and establish banking institutions, no dissent was expressed to the conclusions of the chief justice on the meaning of the term "direct taxes," and the case must be treated by this court as an unanimous re-affirmation of the doctrine of the supreme court on that subject. The case before us falls clearly within the principles on which these adjudications are founded. Under the constitutional designation of the different kinds of taxation to which resort might be made by congress, a tax upon incomes must be classed among the duties authorized, rather than among the direct taxes. No apportionment is necessary when it is laid, and there is nothing to be done here but to sustain the demurrer to the first count of the plaintiff's declaration, and it is ordered accordingly.